UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ANTHONY D. COHEN, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 4:06CV00401-ERW |
| ) | |
| RENAISSANCE GRAND HOTEL ) | |
| A DIVISION OF MARRIOT HOTELS, INC., ) | |
| Defendant(s). ) | |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant Renaissance Grand Hotel's Motion for Summary Judgment [doc. #32].

## **I. BACKGROUND FACTS**[1]

Plaintiff Anthony Cohen filed suit against Defendant Renaissance Grand Hotel for age and race discrimination, harassment, and retaliation. Plaintiff was employed by Defendant for approximately nine weeks, from June 29, 2005 until he was terminated on September 7, 2005. Plaintiff was terminated following an incident between himself and his immediate supervisor Chef Amyn Jamal ("Chef Amyn") . Chef Amyn reprimanded Plaintiff for sharing some bacon that he had cooked with the hot side of the kitchen; Plaintiff worked on the cold side. Plaintiff believed that this was overly critical, as it was common practice to share items between the two sides. Plaintiff believed that he was being treated unfairly, and told Chef Amyn that he was "acting like

---

[1]The Court's recitation of the facts is taken from Defendant's Statement of Uncontroverted Material Facts and Plaintiff's Response to Defendant's Statement of Uncontroverted Material Facts.

1

an asshole."[2] As a result, Chef Amyn brought Cohen to one of the supervisory chefs, either Chef Tim Jansen or Chef Christian Messier. At that time an Associate Suspension Record was completed, stating that Plaintiff would be suspended for three days while the incident in question was reviewed. Plaintiff refused to sign the document, as he did not believe it accurately represented the situation. At that time Plaintiff was taken to the office of Mr. Serocke. Mr. Serocke did not suspend Plaintiff, but rather terminated Plaintiff. Plaintiff admitted to Mr. Serocke that he had told Chef Amyn that he was "acting like an asshole," but attempted to explain to Mr. Serocke what precipitated this comment. Plaintiff testified that he told Mr. Serocke that Chef Amyn was harassing him. Mr. Serocke did not testify that Plaintiff used that exact language, but did testify that Plaintiff believed Chef Amyn was treating him unfairly.

Prior to the incident which resulted in Plaintiff's termination, Plaintiff received a written reprimand on July 28, 2005, from Chef Amyn, for failing to follow instructions and not meeting company standards. Plaintiff had also complained on two separate occasions of Chef Amyn's actions towards him. Plaintiff complained to Assistant Sous Chef Manford Brandtner, that he believed that Chef Amyn was singling him out for criticism regarding his work performance.[3] Plaintiff did not receive any follow up by Chef Brandtner, and the actions of Chef Amyn did not change. Approximately two weeks before Plaintiff was terminated, he again complained of Chef Amyn's actions, this time to Executive Chef Tim Grandinetti. Plaintiff again stated that he

---

[2] The director of human resources, Jeffrey Serocke, also testified that Plaintiff called Chef Amyn a "motherfucker," however, Plaintiff disputes this, and Defendant does not rely upon this in its Motion for Summary Judgment.

[3] The chain of command immediately above Plaintiff, consisted of Chef Amyn, Plaintiff's immediate supervisor and Assistant Sous Chef, Chef Brandtner, also Assistant Sous Chef, Christian Messier, Sous Chef, Tim Jansen, Executive Sous Chef, Tim Grandinetti, Executive Chef, and Tim Cooper, Director of Food and Beverage.

2

believed Chef Amyn was singling him out for criticism, and also stated that he disagreed with the contents of the written warning he received from Chef Amyn on July 28, 2005. Plaintiff did not receive any follow up from Chef Grandinetti, and states that Chef Amyn's actions remained the same. Plaintiff made no further complaints, and received no further disciplinary action until his termination on September 7, 2005.

Defendant has a policy of placing new employees on probation for a period of ninety days. During that probationary period, an employee may be fired for any reason. Prior to commencing employment, Plaintiff was required to read the employee handbook, and sign an acknowledgment form that he had read it and agreed to abide by its terms. The handbook prohibited the use of inappropriate language and insubordination.

## II. PROCEDURAL HISTORY

Plaintiff filed a pro se action against Defendant on March 2, 2006, alleging discrimination. The Court appointed counsel on April 25, 2006, and an Amended Complaint was filed on June 22, 2006. The Amended Complaint alleges six counts against Defendants: Count I alleges race discrimination in violation of 42 U.S.C. § 1981; Count II alleges Age Discrimination in violation of 29 U.S.C. § 621; Count III alleges harassment on the basis of race; Count IV alleges harassment on the basis of age; Count V alleges retaliation based on Plaintiff's complaints of racial discrimination; and Count VI alleges retaliation based on Plaintiff's complaints of age discrimination. On February 15, 2007, Defendant filed a Motion to Dismiss, which this Court denied. Defendant filed the pending Motion for Summary Judgment on May 1, 2007. The Court will now address Defendant's Motion.

## III. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Citrate*, 477 U.S. 317, 322 (1986). The United States Supreme Court has noted that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (quoting Fed. R. Civ. P. 1). "By its terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one such that "a reasonable jury could return a verdict for the nonmoving party." *Id*. Further, if the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S.

at 249. When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 324. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

## IV. DISCUSSION

Defendant seeks summary judgment on all six counts of Plaintiff's Amended Complaint, on the basis that there is no genuine issue of material fact. The parties have both addressed the counts in three groups, discrimination, harassment, and retaliation, based on age and race. The Court will use a similar approach, as the standards are the same for each cause of action based on either race or age.

### A. COUNT I & II-DISCRIMINATION

Defendant asserts that Plaintiff cannot state a prima facie case for either race or age discrimination, and therefore summary judgment is appropriate. Alternatively, Defendant asserts that even if Plaintiff could establish a prima facie case of discrimination, he has failed to provide any evidence that Defendant's proffered reason was pretextual. Lastly, Defendant argues that even if Defendant's proffered reason is shown to be pretextual, Plaintiff has failed to provide any evidence that his discharge was the result of intentional discrimination. Plaintiff asserts that he

5

has stated a prima facie case, and that there is a genuine issue of fact regarding whether Defendant's proffered reason for terminating Plaintiff was pretextual, and whether the real reason was discriminatory. The Court finds that Plaintiff has failed to provide evidence to support a prima facie case of discrimination on either the basis of race or age, and therefore it is unnecessary to address Defendant's second and third arguments.

Title VII makes it unlawful for an employer to discriminate against an employee on the basis of race, and the Age Discrimination in Employment Act ("ADEA") makes it unlawful for an employer to discriminate against an employee on the basis of age. 42 U.S.C. § 2000e-2(a)(1) ("It shall be an unlawful employment practice for an employer--(1) to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . .."); 29 U.S.C. § 623(a)(1) ("It shall be unlawful for an employer--(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age. . ..").  The Eighth Circuit applies the same standards to both race and age discrimination; using the direct evidence framework of *Price Waterhouse v. Hopkins*, 490 U.S. 228, 258 (1989), and the indirect evidence, burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-803 (1973), to determine whether a submissible case has been presented by the plaintiff. *Breeding v. Arthur J. Galolagher and Co.*, 164 F.3d 1151, 1156 (8th Cir. 1999); *See also Rothmeir v. Investment Advisers, Inc.*, 85 F.3d 1328, 1332 n. 5 (8th Cir. 1996) (same).

The Plaintiff has not provided any direct evidence of discrimination, and therefore the Court will turn immediately to the indirect, burden-shifting approach. The first step of the

6

burden-shifting analysis requires the Plaintiff to demonstrate a prima facie case of discrimination.[4] *Breeding*, 164 F.3d at 1156 (The burden-shifting analysis of *McDonnell Douglas*, "first requires the plaintiff to demonstrate a prima facie case of discrimination."). The Plaintiff must show that he is: (1) within the protected class; (2) that he was qualified to perform the job; (3) that he suffered an adverse employment action; and (4) that nonmembers of the class were not treated the same way; sometimes stated that there must be facts that permit an inference of discrimination. *Breeding*, 164 F.3d at 1156; *see also Canady v. Wal-Mart Stores, Inc.*, 440 F.3d 1031, 1034 (8th Cir. 2006) (Application of the four-step prima facie case analysis in race discrimination case).

It is undisputed that Plaintiff is an African American over the age of 40, and is therefore a member of a protected class on the basis of race and age. It is further undisputed that Plaintiff was discharged, which constitutes an adverse employment action satisfying the third element of a prima facie case. The parties disagree over whether Plaintiff is able to provide sufficient evidence to show that Plaintiff was qualified to perform the job, and whether nonmembers of the class were treated differently, the second and fourth elements of a prima facie case. The Court will first address Plaintiff's qualifications. Defendant has provided evidence that the reason for Plaintiff's discharge was Plaintiff's disrespectful conduct towards his immediate supervisor. Furthermore, Plaintiff does not dispute that he acted in the manner alleged by Defendant. Plaintiff asserts in his response brief that he performed the duties of his job satisfactorily, and therefore the second element is satisfied. However, regardless of how well he performed the duties of his job, if he did so while acting in an inappropriate manner towards his supervisor, he was not performing the job

---

[4]Once a prima facie case has been established, the burden then shifts to the employer to show a legitimate, nondiscriminatory reason for the adverse employment action. *Breeding*, 164 F.3d at 1156. "If the employer articulates such a reason, the plaintiff must then demonstrate that the employer's stated reason is pretextual and that the real reason for the employer's adverse employment action was unlawful age or sex [or race] discrimination." *Id.* at 1157.

in accordance with his employer's legitimate expectations.  Defendant cites to a number of cases which hold that the plaintiff failed to meet his initial burden under the *McDonnell Douglas* frame work, when the plaintiff admitted cursing at his employer, which was the basis of the adverse employment action.  *See e.g. Luckett v. Menasha Material Handling Corp.*, 2005 WL 2420398, *18 (N.D.Ill. Sept. 29, 2005) ("[Plaintiff] does not deny the conduct for which he was suspended, including cursing at two supervisors . . ..  Therefore, he was not performing his job according to [his employer]'s legitimate expectations.").   The Plaintiff asserts that he was justified in his actions because of the harassment that he had to put up with by Chef Amyn, however, this is insufficient to negate the fact that such action was in violation of company rules.  Therefore Plaintiff cannot show he was qualified to perform the job, in accordance with Defendant's legitimate expectations.

Even if Plaintiff were able to prove he was qualified, Plaintiff has failed to provide evidence that he was terminated under circumstances that permit an inference of discrimination. Under the terms of Plaintiff's employment, Defendant could terminate Plaintiff for failing to abide by the company policies enumerated in the employee handbook.  *See e.g. McLaughlin v. Esselte Pendalflex Corp.*, 50F.3d 507, 512 (8th Cir. 1995) ("An employer has the right to assign work, to change an employers duties, to refuse to assign a particular job, and to discharge-for good reason, bad reason, or no reason at all, absent intentional discrimination." (Internal citation and alterations omitted)).  Additionally, the Court notes that Plaintiff was still in his 90 day probationary period, which under Defendant's own policies, provided additional latitude to Plaintiff's supervisors to terminate Plaintiff for any rule violation.  The evidence shows it was Plaintiff's violation of company rules, not discrimination, which resulted in his discharge.  Nor has Plaintiff presented evidence that employees not in the protected classes were treated more favorably than Plaintiff

8

under similar circumstances. The only evidence provided by Plaintiff is that other African American and older employees were treated similarly to Plaintiff. This is not sufficient to provide an inference of discrimination. *See Breeding*, 164 F.3d at 1156.

The Court concludes that Plaintiff is unable to show that he was performing adequately, or that he was discharged because of his race or age; therefore he is unable to satisfy his burden of presenting a prima facie case of discrimination. Defendant has provided evidence, and Plaintiff has admitted, that Plaintiff used inappropriate language towards his immediate supervisor, Chef Amyn. An employer, such as Defendant, has a right to terminate an employee for failing to follow the rules established for them. As indicated by Defendant, even if Plaintiff were able to show that he was performing his job adequately, he has not shown that he was terminated under circumstances that provide an inference of discrimination. Therefore, Plaintiff's claims under Count I and Count II of Plaintiff's Amended Complaint are resolved in favor of Defendant.

### B. COUNTS III & IV-HOSTILE WORK ENVIRONMENT

Counts III and IV of Plaintiff's Amended Complaint allege that Plaintiff was subjected to a hostile work environment, constituting discrimination on the basis of race and age. Plaintiff alleges that the actions of Chef Amyn were sufficiently harassing to create a hostile working environment. Defendant disputes that the conditions of Plaintiff's employment were so severe that they altered the conditions of Plaintiff's employment, and further disputes that Chef Amn's actions were motivated by race or age. The Court agrees with Defendant, that Plaintiff has not presented evidence sufficient to establish a material issue of fact regarding Plaintiff's hostile work environment claims.

"Harassment based on an individual's sex [or race] in violation of Title VII, or age, in violation of the ADEA, is actionable when that harassment is 'so severe or pervasive as to alter

9

the conditions of the victim's employment and create an abusive working environment.'"

*Breeding*, 164 F.3d at 1158 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998)).

> "In order to present a prima facie claim of hostile work environment, the Plaintiff must establish that '(1) he belongs to a protected group; (2) he was subject to unwelcome harassment; (3) a causal nexus exists between the harassment and the protected group status; (4) the harassment affected a term, condition, or privilege of employment; and (5) his employer knew or should have known of the harassment and failed to take proper action.'"

*Blackwell v. Daimlerchrysler Corp.*, 399 F.Supp.2d 998, 1006 (E.D.Mo. 2005) (quoting *Sallis v. University of Minnesota*, 408 F.3d 470, 476 (8th Cir. 2005)).

> To be actionable, harassment must be both objectively and subjectively offensive, such that a reasonable person would consider it to be hostile or abusive, and courts make this determination "by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."

*Breeding*, 164 F.3d at 1158 (quoting *Faragher*, 524 U.S. at 786).

Assuming that Plaintiff's testimony is correct, that Chef Amyn subjected him to harassment while he was employed by Defendant, Plaintiff has not provided any evidence that this harassment was because of his race or age, and thus fails to satisfy the third requirement above, a causal nexus between the harassment and the protected group status. *See Blackwell*, 399 F.Supp.2d at 1006. In *Breeding*, even specific comments regarding age were insufficient to support the requisite nexus, where they were shown to be isolated incidents. 164 F.3d at 1159. The only evidence of any harassment is Plaintiff's testimony, and this does not include any specific statements or references to age or race. Plaintiff testified that Chef Amyn singled him out for criticism, and stood directly over his shoulder while he was performing his duties. While these actions were no doubt annoying, such annoyance is not sufficient to raise a claim of a hostile work

environment. *See Breeding*, 164 F.3d at 1159 ("Ms. Breeding felt she was unfairly criticized and often yelled at, but these conditions, while not desirable, do not amount to actionable harassment on the basis of age.").

Furthermore, even if this Court were to find that Chef Amyn's harassment was sufficiently objectively severe, Plaintiff has failed to provide proof of the requisite causal nexus. Plaintiff asserts that the requisite discriminatory animus may be implied, however, the facts of this case do not support such a finding. In *Blackwell* this Court found that "all instances of harassment need not be stamped with signs of overt discrimination to be relevant under Title VII . . .." 399 F.Supp.2d at 1007 (quoting *Carter v. Chrysler Corp.*, 173 F.3d 693, 701 (8th Cir. 1999). However, the rest of that sentence reads "if they are part of a course of conduct which is tied to evidence of discriminatory animus." *Id.* The Eighth Circuit held in *Carter* that "racial epithets are often the basis of racial harassment claims, and may likewise create an inference that racial animus motivated other conduct as well." 173 F.3d at 701 (internal citation omitted). The case at bar contains no overt discriminatory references that can form the basis of an inference regarding the conduct complained of. Plaintiff argues that discriminatory intent should be inferred from general claims of harassment. The law does not permit such a broad inference. There must be clear evidence of a nexus between the behavior and Plaintiff's status in a protected class; such a nexus does not exist.

The Court concludes that Defendant's Motion for Summary Judgment as to Counts III and IV is granted. Plaintiff has failed to provide evidence sufficient to create a genuine issue of material fact, that he suffered harassment which was objectively severe and which was because of his status in a protected group. Without such evidence, Plaintiff's claims fail.

### C. COUNTS V & IV-RETALIATION

Counts V and VI of Plaintiff's Amended Complaint allege that Plaintiff was terminated in retaliation for his complaints about Chef Amyn's harassment. Plaintiff asserts that he was initially written up for a three day suspension, but after speaking with Mr. Serocke regarding Chef Amen's alleged harassment, Mr. Serocke terminated Plaintiff. Defendant refutes Plaintiff's factual allegations, and also argues that even if the series events took place as outlined by Plaintiff, this evidence is insufficient to support a claim of retaliation.

In order to state a prima facie case of retaliatory discrimination under Title VII and the ADEA, Plaintiff must show "1) she engaged in a protected activity . . ., 2) the employer took adverse action against her, and 3) there is a causal connection between the two." *Baker v. John Morrell & Co.*, 382 F.3d 816, 829 (8th Cir. 2004); *see also Stevens v. St. Louis University Medical Center*, 97 F.3d 268, 270 (8th Cir. 1996) (same); *Peterson v. Scott County*, 406 F.3d 515, 524 (8th Cir. 2005) (same in ADEA case) . The familiar burden-shifting approach is then applied if plaintiff successfully meets his initial burden. *Stevens*, 97 F.3d at 270-71. Under element one, "[s]tatutorily protected activity includes opposing an act of discrimination made unlawful by Title VII [or ADEA]. *Pope v. ESA Services, Inc.*, 406 F.3d 1001, 1010 (8th Cir. 2005); *see also Peterson*, 406 F.3d at 525. Under the third element, "[e]vidence that gives rise to an inference of retaliatory motive is sufficient to prove a causal connection." *Stephens v. Keefe Commissary Network, LLC*, 2007 WL 1796216, *10 (E.D.Mo. Jun. 19, 2007). "An inference of a causal connection between a charge of discrimination and termination can be drawn from the timing of the two events, but in general more than a temporal connection is required to present a genuine factual issue on retaliation." *Id.* (quoting *Green v. Franklin National Bank of Minneapolis*, 459 F.3d 903, 915 (8th Cir. 2006); *see also Peterson*, 406 F.3d at 524 (8th Cir. 2005).

12

Defendant disputes that there is sufficient evidence to support a jury verdict in Plaintiff's favor on the first and third required elements. The first element requires a showing that Plaintiff engaged in protected activity. While Plaintiff is correct that it is not necessary for Plaintiff's underlying discrimination claim to succeed in order to have a valid claim for retaliation, he must have engaged in some form of protected activity. *See Cobb v. Anheuser Busch, Inc.* 793 F.Supp.1457, 1489 (E.D.Mo. 1990) ("A finding of unlawful retaliation . . . does not depend on the merits of the underlying discrimination complaint."); *See also Peterson*, 406 F.3d at 524 n. 3 (8th Cir. 2005) ("[P]laintiffs who reasonably believe that conduct violates Title VII should be protected from retaliation, even if a court ultimately concludes that plaintiff was mistaken in her belief."). "Title VII's prohibition against retaliatory discrimination protects activities ranging from the filing of a formal complaint to expressing a belief that the employer has engaged in discriminatory practices." *Cobb*, 793 F.Supp. At 1489. Plaintiff testified in his deposition that he did not indicate to Mr. Serocke that he believed Chef Amyn was harassing him because of his age or race. Plaintiff's deposition testimony is as follows:

> Q (by Defendant's counsel): Did you indicate to Mr. Serocke on September 7th that you thought Mr. Amyn was harassing you because of your age or your race.
>
> A: No, I did not, but it should have been implied that because of my age and race. What other reason would there have been for the harassment?
>
> Q: But the term you used was harassment?
>
> A: The term I used was harassment.

*Def. Statement of Material Facts*, Ex. A, p. 86-87. Although a formal complaint is not required, Plaintiff's testimony does not support a finding that he engaged in any protected activity. There was a history of disagreements between Plaintiff and Chef Amyn, and Plaintiff did not express his

13

belief that the harassment was on the basis of age or race. Therefore, Plaintiff has failed to satisfy the first element of a prima facie case of retaliation.

Plaintiff has also failed to provide sufficient evidence of a causal connection, in order to satisfy the third element of a prima facie case. *Baker*, 382 F.3d at 829. Plaintiff testified in his deposition that it was unclear whether Mr. Serocke was going to terminate Plaintiff or suspend Plaintiff, when Plaintiff interrupted and tried to explain how Chef Amyn had been harassing the Plaintiff. *Def. Statement of Material Facts*, Ex. A, p. 84-85. Plaintiff then testified that Mr. Serocke began to tell Plaintiff that he was suspended, and then changed course and terminated Plaintiff. *Id.* at p.85. This testimony is insufficient to support a finding that it was Plaintiff's complaint of harassment that caused his termination. Plaintiff and Mr. Serocke testified that this was not the first incident involving Plaintiff, and that he had previously received a write-up in his file. Mr. Serocke stated that he was concerned that Plaintiff's employment was not going to work out. The causal link is again missing from Plaintiff's prima facie case.

Plaintiff cannot succeed on a claim of retaliatory discharge without evidence that a protected activity caused the adverse employment action. From the evidence before the Court it is unclear whether Plaintiff even engaged in any protected activity, but even assuming that he did, there is no evidence that it was this activity that caused his termination. Rather, the evidence conclusively supports a finding that Defendant terminated Plaintiff's employment because of his inappropriate statements to Chef Amyn, as well as the record of prior incidents in his personnel file. Defendant's Motion for Summary Judgment on Counts V and VI is therefore granted.

## V.  CONCLUSION

Plaintiff has failed to provide sufficient evidence to support a jury finding in his favor on any of the six counts of his Amended Complaint. The evidence supports Defendant's assertion

14

that Plaintiff was terminated because of his inappropriate conduct towards his supervisor, not because of his race or age. Furthermore, Plaintiff has failed to provide evidence that Chef Amyn's actions towards him were motivated by race or age.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Renaissance Grand Hotel's Motion for Summary Judgment [doc. #32] is **GRANTED**.

Dated this 16th Day of July, 2007.

                                                                      E. RICHARD WEBBER
                                                                      UNITED STATES DISTRICT JUDGE